**Sandra Faye WORTHEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1190–89.**

Court of Criminal Appeals of Texas, En Banc.

March 6, 1991.

Steven C. Hilbig (court appointed), San Antonio, for appellant.

Fred G. Rodriguez, Dist. Atty., Arnulfo Ruiz, Jay Brandon and Laurie Booras, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellant, Sandra Faye Worthey, was charged with the offense of possession of methamphetamine under the Texas Controlled Substances Act, Art. 4476–15, § 4.02(b)(6), V.A.C.S. (repealed 1989).[1] After a pretrial motion to suppress the search was denied, appellant plead guilty. The trial court found appellant guilty and assessed punishment at six years in the Texas Department of Corrections.[2]

The Fourth Court of Appeals reversed the trial court, holding that the police officer lacked probable cause to search the interior of appellant's purse, and thus, the search violated appellant's constitutionally protected Fourth Amendment rights. *See Worthey v. State,* 773 S.W.2d 783 (Tex. App.—San Antonio 1989). We granted the State's petition for discretionary review to determine whether a warrantless search for weapons in the interior of appellant's purse was reasonable under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We reverse the Court of Appeals and affirm the trial court's decision.

The State's sole ground for review complains that the Court of Appeals erred concerning the level of certainty a police officer must have to believe a suspect is armed before the officer may legally search the suspect's purse.

The issue in this case is the "reasonableness" of the search and seizure of appellant's purse, not one of probable cause. *See, e.g., Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Keah v. State,* 508 S.W.2d 836 (Tex.Cr.App.1974). The test as set forth in *Terry* is "whether the officer's action was justified in its inception, and whether it was reasonably related in scope to the circumstances that justified the inference in the first place." *See Ter-*

---

1. V.T.C.A., Health and Safety Code § 481.102(6) (effective September 1, 1989).

2. Now the Texas Department Of Criminal Justice, Institutional Division.

*ry,* 392 U.S. at 19–20, 88 S.Ct. at 1879; *see also Keah,* 508 S.W.2d at 838.

The record reflects that on March 24, 1988 at 2:30 a.m. Officer A.L. Miller and other officers executed a valid search warrant for a Bexar County residence. The appellant was not named in the search warrant. At approximately 3:00 a.m. a vehicle approached the premises where the search was being conducted.[3] The appellant and another individual got out of the vehicle and walked to the front porch of the premises. Undercover Officers Miller and Smith approached the appellant and an individual. Miller and Smith identified themselves as police officers and told appellant and the other individual "to keep their hands where they were."

Immediately thereafter, appellant, who was carrying a normal size purse with a strap hanging from her right shoulder, clutched the purse and turned to her side so that the purse and her right hand were away from the officer. When the appellant made this movement, the officer thought appellant may have a weapon inside the shoulder bag since the officer could no longer see her right hand and shoulder bag. The officer removed the purse from appellant's custody and conducted a patdown of the purse in order to feel for weapons for protection purposes. After the patdown, the officer was unable to ascertain as to whether the purse contained a weapon. For this reason, the officer decided to search the interior of appellant's handbag. When the officer opened the handbag he found "contraband along with items of paraphernalia."[4]

The Court of Appeals held that the officer lacked *probable cause* to search inside appellant's purse. *See Worthey,* 773 S.W.2d at 785. The court found that Officer Miller had a reasonable suspicion that appellant's right hand was reaching for a weapon and that it was proper for the officer to frisk the exterior of appellant's purse, but it was improper to search the interior of appellant's purse. *See id.*

▇ *According to Terry,*

"there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; and the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

*Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *Mays v. State,* 726 S.W.2d 937, 944 (Tex.Cr. App.1986); *Lippert v. State,* 664 S.W.2d 712, 719 (Tex.Cr.App.1984); *Keah, supra* at 838.

And,

"where a police officer observes conduct which leads him to reasonably conclude in the light of his experience that a crime may be taking place and that the person with whom he is dealing may be armed and presently dangerous, and the officer identifies himself as a policeman and makes reasonable inquiries that do not dispel his fear for his safety, he is entitled for his and other's protection to conduct a carefully limited search of the suspect to discover weapons."

*Terry,* 392 U.S. at 30, 88 S.Ct. at 1884; *Beck v. State,* 547 S.W.2d 266, 268 (Tex.Cr. App.1977); *Keah,* 508 S.W.2d at 838; *Wood v. State,* 515 S.W.2d 300, 306 (Tex.Cr.App. 1974).

Therefore, when applying *Terry,* the officer need only have a reasonable belief, not probable cause, to conduct a self-protective search. *See Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *see also Keah, supra,* at 839. Hence, it is well-settled that a protective

---

**3.** Officer Miller obtained additional information that a vehicle possibly containing narcotics may arrive during the search.

**4.** The "contraband and paraphernalia" inside appellant's purse included four plastic packets containing approximately ½ gram of methamphetamine, a tourniquet, spoon, matchbox, film canister with water, nine syringes and a cotton swab.

search for weapons may extend beyond the person in the absence of probable cause to arrest. *See Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *see also, Carrasco v. State,* 712 S.W.2d 120 (Tex.Cr.App.1986).

In order to assess the "reasonableness" of Officer Miller's conduct in searching the interior of appellant's purse, "specific and articulable facts" must appear in the record which would warrant a self-protective search for weapons. *See Terry,* 392 U.S. at 21, 88 S.Ct. at 1879; *see also Ramirez v. State,* 672 S.W.2d 480, 482 (Tex. Cr.App.1984); *Keah, supra,* at 839.

In the instant case appellant approached the premises at 3:00 a.m. while a valid search was being executed. It was dark outside because the front porch light was not on and the lighting behind the residence shadowed the front porch where appellant and the other individual were standing. It then became apparent to Officer Miller, who had not yet identified himself, that appellant intended to visit the premises in question. When they approached the porch, the officers identified themselves and told appellant and the individual to refrain from moving their hands. Appellant disobeyed the officer's instruction and moved her right hand and shoulder bag away from the officer's view. The officer testified that it appeared as though appellant seemed to be "hiding the handbag." Officer Miller, a thirteen-year veteran of law enforcement, suspected the appellant was armed and dangerous. Fearing for his safety and others, the officer took possession of appellant's shoulder bag and proceeded to "frisk" the outside of the purse using the least intrusive method. Miller stated, based on his experience, he was "familiar with the feel of a weapon

through pants or a coat pocket or other material."

After frisking the exterior of appellant's purse, Miller testified that he "could not feel the center of the purse;" and that the purse "didn't feel that soft ... [d]efinitely something to keep my fingers and thumb from touching each other inside the purse." The officer also testified that "there could have been a weapon inside." At that point Miller took appellant inside where the lighting was better and a search for weapons was conducted of the contents of her handbag, thereby discovering the contraband. The officer was reasonable in his belief to search the interior of appellant's purse because of the possibility of a weapon and injury to himself and others. *See, Beck,* 547 S.W.2d at 267.

Both appellant and the Court of Appeals relied on *Lippert v. State,* 664 S.W.2d 712 (Tex.Cr.App.1984) in which this Court held that the mere presence of a person at the scene of a search is not sufficient reasonable suspicion to warrant a search. *See Lippert, supra,* at 717.[5]

In *Lippert,* the appellant arrived at a residence where a valid search was being conducted. *See id.* at 715. The officers, without having any reasonable belief that appellant was armed and dangerous or involved in criminal activity, searched appellant. *See id.* at 717. We enumerated many factors, helpful but not conclusive in themselves, to consider in circumstances where a search may be invalid. These factors include, but are not limited to the following:

1) "no flight or no furtive gestures or sudden movements towards a pocket or other place where a weapon might be concealed; 2) no threats made and no attempt made to resist detention; 3) appellant is not shown to be committing or

---

5. In *Conner v. State,* 712 S.W.2d 259 (Tex.App.—Austin 1986, review. ref'd) the Court of Appeals stated that the *Lippert* opinion articulated the following principles: "(1) a warrant to search a premises and to arrest and search specific individuals does not carry with it the right to detain, search or frisk persons found on the premises but not directly associated with the premises and not named or specifically described in the warrant; (2) to justify the detention and search of a person, other than an occupant, present at the scene of a valid execution of a search warrant, there must be some independent factors, other than mere presence, tying the person to the unlawful activities in the premises; (3) a frisk of a person merely present at the scene must be justified under *Terry v. Ohio,* 392 U.S. 1, [88 S.Ct. 1868, 20 L.Ed.2d 889]." *See Conner, supra,* at 260. We agree with this reasoning.

about to commit any criminal offense and; 4) appellant does not seem to be under the influence of alcoholic beverages or drugs." *See, Lippert,* 664 S.W.2d at 721.

The *Lippert* case is distinguishable from the case at bar because appellant made a sudden movement which caused her right hand and purse to be obstructed from the officer's view. This movement was made after Officer Miller told appellant not to move her hands. For the protection of himself and others, the officer obtained the purse and correctly proceeded to frisk it to determine if appellant was armed and dangerous. The officer could not tell whether a weapon was lodged in the middle of the purse. According to *Terry,* Miller was not required to be absolutely certain or have probable cause that a weapon was contained in appellant's purse in order to do a valid search of the contents. *See Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. The officer need only have reasonable belief that the person may be armed and dangerous. *See, e.g., Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Keah v. State,* 508 S.W.2d 836. (Tex.Cr.App.1974).

The scope of the search of the purse in the instant case was valid. *See, e.g., Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.[6] Miller told appellant not to move her hand and appellant disobeyed, making a sudden movement which obstructed the officer's view of her hand and purse. Appellant's sudden movement towards her purse created "a specific articulable suspicion" to fear that appellant could possibly be armed and dangerous. *See Terry,* 392 U.S. at 21, 88 S.Ct. at 1879.[7] The officer then performed the least intrusive search of appellant's purse by frisking the outside of the purse to check for weapons and this revealed something solid inside the purse. He confined his search to what was minimally necessary to investigate whether appellant carried a weapon in her handbag.

We hold the search of Worthey and her purse to be justified. At the time Miller searched for weapons, he had a reasonable belief that appellant could have been armed and dangerous. Therefore, the trial court was correct in denying the motion to suppress and properly admitted the methamphetamine into evidence. We reverse the Court of Appeals' decision and affirm the judgment of the trial court.

CLINTON, J., dissents because the majority fails to address the *ratio decidendi* of the Court of Appeals.

OVERSTREET, J., dissents.

6. In *Martin v. State,* 761 S.W.2d 26 (Tex.App.—Beaumont 1988, review ref'd), which is factually similar to *Worthey,* a valid search was being conducted at a residence. *See Martin,* at 28. The officer instructed that the individuals present remain where they were. *See id.* Appellant who was sitting on the couch picked up her large purse which was beside her and placed it upon her lap as if she were trying to conceal something. *See id.* Fearing that the purse may contain a weapon, the officer searched the purse finding methamphetamine. *See id.* The Court of Appeals held that the search of appellant and her purse was justified. *See id.* at 28–29. The Court of Appeals reversed Martin's conviction on other grounds and we granted the State's petition for review and remanded the case to the Court of Appeals for

harm analysis. *See Martin v. State,* 764 S.W.2d 562 (Tex.Cr.App.1989).

7. In *Manry v. State,* 621 S.W.2d 619 (Tex.Cr.App. 1981), we upheld a search of appellant, a patient, at a doctor's office as reasonable. *See Manry, supra,* at 622. Police officers received information that illegal prescriptions were being dispensed. *See id.* at 620. The officers announced and entered the office. *See id.* The appellant moved suddenly behind a counter, was searched and hydromorphone was subsequently found. *Id.* at 621. We held because of appellant's sudden movement, the officers had an "articulable suspicion" that entitled them upon entering the premises to make further investigation under the authority of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. *Id.* at 622.