Lionel ZENO, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–91–00937–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 9, 1993.

Discretionary Review Refused
Dec. 15, 1993.

Maggie McBride, Houston, for appellant.

John B. Holmes, Jr., Alan Curry, Colleen Barnett, Houston, for appellee.

Before COHEN, MIRABAL and PRICE [1], JJ.

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Hous-

## OPINION

COHEN, Justice.

After the trial judge overruled appellant's motion to suppress evidence, he pled no contest to possession of cocaine, and the trial judge assessed punishment at seven-years confinement. We reverse.

Appellant contends the cocaine was found in an illegal search of his person. We agree.

Late in the morning of July 3, 1991, Officer Humphrey saw appellant and another man walk underneath the freeway. When the men saw Humphrey, they turned and walked the other way; they were "walking in and out of cars ... in and out of traffic." Humphrey thought the men might have been drinking because of the way they walked through the traffic. There had been numerous complaints about unemployed laborers drinking and walking the streets in this "dry" area of town, including a complaint that a bar-b-que pit was stolen from a porch. Humphrey had made numerous alcohol-related arrests in the area. Humphrey stopped the men and asked where they were going; they did not respond. Humphrey asked for identification, and appellant said he had none. Humphrey then radioed for backup, patted both men down for weapons, and found in appellant's pocket a crack pipe containing cocaine.

Appellant contends Humphrey had no warrant, no probable cause, and no reasonable suspicion that appellant was armed and dangerous; therefore, the search was illegal. The State replies that the search was justified to ensure Humphrey's safety while he investigated.

■ A police officer may conduct a protective patdown when he observes conduct suggesting that crime may be occurring and the suspect may be armed and dangerous. *Harris v. State*, 827 S.W.2d 49, 51 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). The officer must be able to point to specific and articula-

ton, participating by assignment.

ble facts from which he reasonably inferred that the individual being searched was armed and dangerous. *Id.*

Here, Humphrey stated no specific and articulable facts suggesting appellant was armed and dangerous. Humphrey testified that when he saw appellant turn around, it "made me curious ... [and] I didn't know if he had been drinking so I stopped him to question him." The only other specific facts Humphrey related concerned complaints from citizens that laborers in the area stole a bar-b-que pit from a porch, and that laborers walked the streets drunk.

There was no evidence that when Humphrey searched for weapons, he had a reasonable belief, based on an individualized suspicion, that appellant was armed. Therefore, the search was not justified.

Appellant's point of error is sustained. The judgment is reversed, and the cause is remanded.

MIRABAL, J., dissenting.

MIRABAL, Justice, dissenting.

In my opinion, the trial court could have properly concluded that Officer Humphrey, having valid grounds for an investigative stop, was in reasonable fear for his safety when he conducted the pat-down search of appellant. Therefore, the trial court did not abuse its discretion when it found the pat-down search was legal.

The majority and I disagree about the proof necessary to justify a pat-down search during a proper investigative detention.[1]

According to the majority, the State had the burden to prove that, before the frisk, Humphrey saw or heard something specific that led him to reasonably suspect that appellant possessed a gun, a knife, or some other weapon. Humphrey did not testify that he saw a bulge in appellant's clothes that looked like a weapon, nor did appellant say anything about a weapon, or make any furtive movement indicating he was reaching for or concealing a weapon. Appellant's companion did not say or do anything to specifically indicate he had a weapon. According to the majority, because of the lack of that kind of specific evidence, Humphrey had no right to make a protective pat-down search to ensure his safety while he questioned the two men before him.

The majority relies on *Harris v. State*, 827 S.W.2d 49, 51 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). *Harris* is distinguishable in two important ways: (1) there was no evidence the police suspected Harris of engaging in criminal activity,[2] and (2) during the pat-down, the police retrieved a "metal bubble gum box that looked like a band-aid box," and the police improperly proceeded to open that box. In *Harris*, this Court correctly held the trial court should have suppressed the evidence found in the bubble gum box.

In the present case, Officer Humphrey, a motorcycle patrolman, was alone when he stopped two men as they walked onto the parking lot of a large Exxon gas station at the corner of Tartar and Highway 225 in Pasadena. Humphrey reasonably suspected the two men were intoxicated. It appeared the two men had attempted to evade Humphrey when they first saw him. Humphrey got off his motorcycle and asked the two men where they were going; they did not respond. There had been numerous com-

---

1. The majority does not hold that the temporary investigative detention of appellant was improper, and I agree the detention was proper. To justify an investigative detention, the officer must have a reasonable suspicion, based on specific, articulable facts that, in light of the officers' experience and general knowledge, lead the officer to the reasonable conclusion that criminal activity is underway and that the detained person is connected with the activity. *Holladay v. State*, 805 S.W.2d 464, 471 (Tex.Crim.App.1991); *Daniels v. State*, 718 S.W.2d 702, 705 (Tex.Crim. App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983); *Pickens v.*

*State*, 712 S.W.2d 560, 562 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). In the present case, the trial court could have believed that the officer had a reasonable suspicion that appellant was intoxicated in public, and therefore, the trial court could have reasonably concluded the temporary investigative detention of appellant was proper.

2. The appellant in *Harris* was a passenger in a car driven by a suspected drug dealer. There was no evidence the appellant was present during the drug sale, assisted it, or even knew of it.

plaints about unemployed laborers drinking and walking the streets in this area of town. Humphrey himself had made numerous alcohol-related arrests in this area. Humphrey got on the radio and told the dispatcher where he was, so another unit could be sent to back him up. Appellant was wearing a long T-shirt that covered his pockets. Humphrey testified that he patted both men down for weapons "for my safety."

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Chief Justice Warren, speaking for the Court, acknowledged even 25 years ago that the Court was aware of the

immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives. In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest.

*Terry,* 392 U.S. at 23–24, 88 S.Ct. at 1881.

In *Terry,* not only did the officer have reasonable suspicion that justified a temporary investigative detention, the officer *also had* information that led him to reasonably conclude, in light of his experience, that the suspect may be armed and presently dangerous. *Terry,* 392 U.S. at 28–30, 88 S.Ct. at 1883–84. Therefore, it was not necessary to determine, and the majority declined to determine, the propriety of a pat-down search under different facts, such as when the officer has reasonable grounds for a temporary investigative detention, *but does not have* specific, articulable facts particularly indicating the individual is armed. Concurring Justice Harlan would have addressed the latter

scenario, and gives us insight into how the U.S. Supreme Court would have ruled if the facts in *Terry* had required such a ruling. Justice Harlan wrote:

While I unreservedly agree with the Court's ultimate holding in this case, I am constrained to fill in a few gaps, as I see them, in its opinion. I do this because what is said by this Court today will serve as initial guidelines for law enforcement authorities and courts throughout the land as this important new field of law develops.

.     .     .     .     .

The state courts held ... that when an officer is lawfully confronting a possibly hostile person in the line of duty he has a right, springing only from the necessity of the situation and not from any broader right to disarm, to frisk for his own protection. This holding, with which I agree and with which I think the Court agrees, offers the only satisfactory basis I can think of for affirming this conviction. The holding has, however, two logical corollaries that I do not think the Court has fully expressed. In the first place, if the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a *forcible* stop.

.     .     .     .     .

Where such a stop is reasonable, however, the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence. Just as a full search incident to a lawful arrest requires no additional justification, a limited frisk incident to a lawful stop must often be rapid and routine. There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet.

The facts of this case are illustrative of a proper stop and an incident frisk. Officer McFadden had no probable cause to arrest Terry for anything, but he had observed circumstances that would reasonably lead an experienced, prudent policeman to suspect that Terry was about to engage in

burglary or robbery. His justifiable suspicion afforded a proper constitutional basis for accosting Terry, restraining his liberty of movement briefly, and addressing questions to him, and Officer McFadden did so. When he did, he had no reason whatever to suppose that Terry might be armed, apart from the fact that he suspected him of planning a violent crime. McFadden asked Terry his name, to which Terry "mumbled something." Whereupon McFadden, without asking Terry to speak louder and without giving him any chance to explain his presence or his actions, forcibly frisked him.

I would affirm this conviction for what I believe to be the same reasons the Court relies on. I would, however, make explicit what I think is implicit in affirmance on the present facts. Officer McFadden's right to interrupt Terry's freedom of movement and invade his privacy arose only because circumstances warranted forcing an encounter with Terry in an effort to prevent or investigate a crime. Once that forced encounter was justified, however, the officer's right to take suitable measures for his own safety followed automatically.

*Terry,* 392 U.S. at 31–34, 88 S.Ct. at 1885–86. Justice White, in his concurring opinion, similarly writes:

> In my view, it is temporary detention, warranted by the circumstances, which chiefly justifies the protective frisk for weapons.

*Terry,* 392 U.S. at 34, 88 S.Ct. at 1886.

In the present case, the temporary investigative detention by Officer Humphrey was warranted by the circumstances. Unlike the facts in *Terry,* however, Humphrey did not suspect that appellant was connected with a crime of violence, but rather Humphrey suspected appellant and his companion were intoxicated in public. The issue here is whether, once the forced encounter with appellant was justified, Officer Humphrey automatically had the right to conduct a pat-down

search if he was in reasonable fear for his safety, even though he could not point to specific words or acts of appellant relative to a possible weapon. The majority in *Terry* expressed the relevant test as follows:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry,* 392 U.S. at 27, 88 S.Ct. at 1883.

A Fifth Circuit Court of Appeals case with facts similar to the present case is *U.S. v. Rideau,* 969 F.2d 1572 (5th Cir.1992) (en banc).[3] There, the defendant was detained on the street for investigation of intoxication. The issue in the case was whether the police had reasonable grounds to frisk the defendant, even though the officer did not see a bulge indicating the presence of a weapon, the defendant did not say anything indicating he had a weapon, and the defendant did not reach for a weapon. A majority of the court stated:

> As long as all the facts and circumstances, viewed objectively, support the officer's decisions, the Fourth Amendment is satisfied. We must attempt to put ourselves in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger in a particular context.

969 F.2d at 1574. The court concluded that, under all the circumstances in that case,

> there is no basis for concluding that the officer's concerns for his safety were unreasonable.

> .    .    .    .    .

> We do not depart from the rule that police officers must have specific and articulable facts indicating that their safety is in danger to justify a patdown. Nor do we assert that a lawful detention is a license to frisk. We simply look to the reality that the setting in which the police officer acts may reasonably and significantly affect his

---

**3.** I note that a three-judge panel of the Fifth Circuit initially issued an opinion in the case, reported at *U.S. v. Rideau,* 949 F.2d 718 (5th Circ.1991). This Court, in *Harris v. State,* cited

that opinion. 827 S.W.2d at 51. Subsequently, the Fifth Circuit granted rehearing en banc, and reached a different result from that reached by the three-judge panel. 969 F.2d at 1573.

decisional calculus. A reasonably prudent man in officer Ellison's position could believe that he was in danger as he approached Rideau. The minimally intrusive action that he took to ensure his safety and that of his partner was not a violation of Rideau's constitutional rights. The Fourth Amendment does not require police to allow a suspect to draw first. This is East Texas, but it is 1992.

969 F.2d at 1575–76.

I have been unable to find a Texas state court case on "all-fours" with the present case. However, language in recent Texas Court of Criminal Appeals cases does shed light on the issue before us.

In *Worthey v. State,* 805 S.W.2d 435 (Tex. Crim.App.1991), the court confirmed that the mere presence of a person at the scene of a place being searched, without more, does not justify a *Terry*-type, pat-down search by police of that person. 805 S.W.2d at 438. The court's discussion of its prior holding in *Lippert v. State,* 664 S.W.2d 712 (Tex.Crim.App. 1984), is helpful:

> In *Lippert,* the appellant arrived at a residence where a valid search was being conducted.... The officers, without having any reasonable belief that appellant was armed and dangerous *or* involved in criminal activity, searched appellant.... We enumerated many factors, helpful but not conclusive in themselves, to consider in circumstances where a search may be invalid. These factors include, but are not limited to the following:
>
>> 1) *no flight* or no furtive gestures or sudden movements towards a pocket or other place where a weapon might be concealed; 2) no threats made and no attempt made to resist detention; 3) *appellant is not shown to be committing or about to commit any criminal offense* and; 4) *appellant does not seem to be under the influence of alcoholic beverages or drugs. See Lippert,* 664 S.W.2d at 721.

*Worthey,* 805 S.W.2d at 438–39 (emphasis added).

In *Worthey,* the court found the presence of the first of the factors described in *Lip-*

*pert:* the appellant's sudden movement toward her purse justified the frisk of her purse to check for weapons. 805 S.W.2d at 439. In the present case, portions of factors 1, 3 and 4 are present: 1) appellant appeared to evade, or flee, from Officer Humphrey when appellant saw him; 3) Humphrey had a reasonable suspicion that appellant was committing a criminal offense; and 4) appellant seemed to be under the influence of alcoholic beverages or drugs. The implication of the *Worthey* opinion is that these factors are relevant to a determination of whether an officer is warranted in the belief that his safety or that of others is in danger, and therefore whether a *Terry* pat-down search is justified.

The court's analysis in the case of *Davis v. State,* 829 S.W.2d 218 (Tex.Crim.App.1992) is also enlightening, particularly considering what the opinion *does not* address. In *Davis,* a police officer responded to a dispatch call reporting three black males selling narcotics in front of apartment number eight in a particular apartment complex. Upon arrival, the officer saw three black males who, when they saw the officer, "made a hasty effort" to get into a nearby vehicle. The officer detained the three men for investigation. He stopped his car in such a way as to prevent the men from driving away, and he asked them to step out of the car and place their hands on the patrol car. The officers conducted a pat-down search for weapons. In the appellant's trench coat pocket, an officer found a matchbox. He then opened the match box and found cocaine. *Davis,* 829 S.W.2d at 219.

The court held the temporary investigative detention was justified, noting that the officer had a reasonable suspicion of criminal activity. 829 S.W.2d at 220. Once the court determined the stop was justified, the next item of analysis was whether the officer was justified in opening the match box. 829 S.W.2d at 221. The court "skipped" any discussion about whether, *in addition to* having a reasonable suspicion of criminal activity authorizing a detention, the officer also had, before he conducted the frisk, specific and articulable facts from which he reasonably inferred the appellant was armed and dan-

## 170

gerous. The court did not treat the "stop" and the "frisk" separately in its analysis, but rather treated the "stop and frisk" as one event, stating:

> During a stop and frisk, in the absence of probable cause, a police officer who reasonably fears for his or her safety, or that of others, can conduct a limited search of the outer clothing for weapons. *Terry.*

829 S.W.2d at 220.

I believe there is implied in the court's analysis in *Davis* an acknowledgment that once a police officer has reasonable grounds to detain a person to investigate criminal activity, the officer has the right to conduct a limited pat-down search for weapons, if, under all the circumstances, the officer "reasonably fears for his safety." [4]

In my opinion, the trial court in the present case could have believed that Officer Humphrey, a lone motorcycle cop forcibly confronting two uncooperative, possibly intoxicated men on the street, was in reasonable fear for his safety when he conducted the pat-down search of appellant, whose pockets were covered by his shirt and therefore not visible. Accordingly, I would hold the trial court did not abuse its discretion when it found the pat-down search was legal.

I would overrule appellant's sole point of error and affirm the judgment.

---

4. I also glean the following from the cases: If there is *no* individualized reasonable suspicion that a person is connected to criminal activity (but rather it is just as likely the person is simply "at the wrong place at the wrong time"), then, before the officer can lawfully frisk that person, the officer must be able to point to specific and articulable facts from which he reasonably inferred the person was armed and dangerous.