Alexandra PENA, Appellant

v.

The STATE of Texas, Appellee.

No. 01–92–01206–CR.

Court of Appeals of Texas, Houston (1st Dist.).

July 20, 1995.

---

Tom Zakes, Houston, for appellant.

John B. Holmes, Jr., and Alan Curry, Houston, for appellee.

## OPINION

WILSON, Justice.

The trial court convicted Alexandra Pena, the appellant, of possession of a controlled substance, and sentenced her to five-years probation. On appeal, we are asked to decide whether the trial court abused its discretion in denying the appellant's motion to suppress the contraband, which was found in the appellant's purse during a search for weapons. We affirm.

### Fact Summary

On April 12, 1992, police responded to a shooting at an apartment complex, and found the appellant's husband, who had been shot once in each buttock, kneeling down over a couch. The victim told police several conflicting stories about who had shot him, including that his wife shot him. Witnesses told police officers after the shooting they saw two men and the appellant running from the apartment. The witnesses described the appellant as carrying a black purse and holding a baby in each arm. When the officers saw the appellant, they approached her to question her. Officer Martinez held the babies, while Officer Davidson searched the appellant. Officer Davidson took the appellant's purse away from her while he searched her. After finding no weapons on the appellant, Officer Davidson testified he felt the outside of the appellant's purse to determine whether there was a weapon inside. Officer Davidson testified he felt no weapon from the outside the purse, but then opened it and found cocaine and marijuana inside.

The appellant filed a motion to suppress the contraband taken during the search, but the trial court denied it. The appellant then pled guilty to the felony of possession of a controlled substance.

### Scope of the search

In her sole point of error, the appellant contends that the trial court erred in denying her motion to suppress the evidence. The appellant contends that once the police determined from feeling the outside of her purse that it did not contain a weapon, they went beyond the scope of a legal search by opening it and looking inside.

The State argues the police officers believed the appellant had a gun and felt their safety could be in danger, and, therefore, the officers had the right to search inside the purse. The State also contends the officers would be risking their lives if they did not search the purse, but merely felt no weapon from the outside, and gave the purse back, only to find out the appellant had kept a weapon inside.

At the hearing on the motion to suppress, the trial judge is the sole fact finder, and, as such, may believe or disbelieve all, or any part of, any witness' testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App.1980); *Santos v. State*, 822 S.W.2d 338, 339 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). It is the trial court's prerogative to believe the officer's version of the facts and to disbelieve the defendant's version. *Stephenson v. State*, 494 S.W.2d 900, 904 (Tex.Crim.App.1973); *Lopez v. State*, 663 S.W.2d 587, 591 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). On appeal, we will not set aside a trial court's ruling on a motion to suppress unless the trial court abused its discretion. *Meek v. State*, 790 S.W.2d 618, 621 (Tex.Crim.App.1990); *Barnes v. State*, 870 S.W.2d 74, 77 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd); *Santos*, 822 S.W.2d at 339.

The law permits reasonable searches for weapons for the protection of police officers when they have a reasonable belief that the individual they are dealing

with is armed and dangerous.[1] *Terry v. Ohio,* 392 U.S. 1, 27, 30, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *Worthey v. State,* 805 S.W.2d 435, 437 (Tex.Crim.App.1991). The test is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884. Reasonableness must be measured by "specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* 392 U.S. at 21, 88 S.Ct. at 1880. Whether the standard is met is based on the totality of the circumstances. *Sandoval v. State,* 860 S.W.2d 255, 259 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). To assess the reasonableness of the search of the interior of the appellant's purse, the record must show "specific, articulable facts," which in light of the officers' experience and general knowledge warrant a self-protective search for weapons. *Worthey,* 805 S.W.2d at 438; *Anderson v. State,* 701 S.W.2d 868, 873 (Tex.Crim.App.1985). The issue in this case is the reasonableness of the search and seizure of the appellant's purse, not one of probable cause. *Worthey,* 805 S.W.2d at 436.

■ The scope of the frisk is generally limited to a patdown of the outer clothing for concealed instruments of assault. *Terry,* 392 U.S. at 25–26, 88 S.Ct. at 1882. This also extends beyond the person, provided the search is limited to those areas in which a weapon may be placed or hidden and the officers possess a reasonable belief that the occupant is dangerous. *Michigan v. Long,* 463 U.S. 1032, 1048, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983) (search of passenger compartment of automobiles); *Worthey,* 805 S.W.2d at 437–38 (search of a purse). We look to the record to determine what the police stated was their reason for looking into the purse.

Police testified they searched the appellant because they did not know whether she was armed. Officer Davidson testified as follows:

[Defense Counsel]: So the primary reason for this search was to protect you and preserve safety; is that correct?

[Officer Davidson]: That's correct, sir.

[Defense Counsel]: And that was the only reason that you did that, was (sic) stop everything right where it was and make sure nobody else got hurt?

[Officer Davidson]: That, and if there was any evidence in the bag.

The Court of Criminal Appeals has held that a warrantless search of a purse is valid when there are articulable facts in the record that justify an officer's self-protective search for weapons. *Worthey,* 805 S.W.2d at 438–39. In *Worthey,* police described the defendant's purse as normal in size, which the defendant had over her shoulder. *Id.* at 437. The police officer justified his opening the purse and searching inside because the defendant turned the purse away from the officer, obstructing the officer's view of her hand and purse. *Id.* The officer testified that he pressed the sides of the purse, but he could not feel the center. He said something was definitely keeping his fingers and thumb from touching, that "there could have been a weapon inside." *Id.* at 438. The court held the officer's search of the bag was warranted because of the possibility of a weapon and injury to himself and others. *Id.*

■ The dissent insists that since Officer Davidson did not feel a weapon from the outside of the appellant's purse, he did not have the right to open the purse. We disagree with the legal conclusion reached by the dissent. As an appellate court, we review the trial judge's ruling on a motion to suppress on an abuse of discretion standard. *Meek v. State,* 790 S.W.2d 618, 621 (Tex. Crim.App.1990). The evidence presented at trial identified the appellant as a suspect in the shooting—witnesses pointed out the appellant as the victim's wife, she was seen running from the scene shortly after the shooting with two children in her arms, and the victim identified the appellant, albeit inconsistently, as the shooter. It is only reasonable for the trial judge to believe the officers felt they were dealing with a suspect who was potentially armed and dangerous. Under *Worthey,* we find the record shows

---

1. Although we discuss the search under Terry standards, we are not to be understood as decid-

ing the officers lacked probable cause to arrest given the appellant was identified as the shooter.

specific and articulable facts which warrant the officers self-protective search for weapons.

We affirm.

COHEN, J., requested a vote to determine if the case should be heard en banc, pursuant to TEX.R.APP.P. 79(d), (e), and 90(e).

OLIVER–PARROTT, C.J., and COHEN, MIRABAL, WILSON and HEDGES, JJ., voted for en banc review.

HUTSON–DUNN, O'CONNOR and ANDELL, JJ., voted against en banc review.

TAFT, J., did not participate.

WILSON, J., filed the opinion of the court in which OLIVER–PARROTT, C.J., and COHEN, MIRABAL and HEDGES, JJ., joined.

O'CONNOR, J., filed a dissenting opinion in which HUTSON–DUNN and ANDELL, JJ., joined.

O'CONNOR, Justice, dissenting.

I respectfully dissent.

The issue here is whether *Terry* [1] and *Worthey* [2] permit the police to search inside a purse after the officers conduct a "patdown" of the outside of a purse and have no reason to believe it holds a weapon. I would find they do not and reverse.

In this case, Officer Martinez testified that he was not alarmed or afraid by the appellant's actions before or during the search.

[Defense Counsel]: At the time you saw Mrs. Pena, was she making any type of threatening moves or blandish (sic) any weapons or anything like that?

[Officer Martinez]: No, sir, not at the time.

[Defense Counsel]: In fact, she had a small child in each arm; is that correct?

[Officer Martinez]: Yes, sir.

[Defense Counsel]: It would have been very difficult for her carrying those two children to reach in her bag and produce a weapon and start shooting, correct?

[Officer Martinez]: Well, if she wanted to display a weapon, all she had to do is drop the infants and pull it out.

Officer Davidson testified that before the search he took the purse away from the appellant and kept the purse far enough away from her that she could not reach it.

[Defense Counsel]: [Y]ou didn't see any suspicious bulges in the bag that looked like a weapon, did you?

[Officer Davidson]: No.

[Defense Counsel]: Nothing indicated to you there was a weapon? It didn't feel like there was a hot gun in there or anything like that?

[Officer Davidson]: No, sir.

[Defense Counsel]: You didn't feel it first to see if there was a hard object?

[Officer Davidson]: Yes, sir, we did do that.

[Defense Counsel]: And you felt the gun inside?

[Officer Davidson]: No, we didn't. It was (interrupted)

[Defense Counsel]: Pass the witness.

The record contains no other references as to the reasonableness of the search. There is no evidence of the size of the bag, the thickness of its material, or how full the purse was when the officer felt the bag. We note that the burden of proof on a warrantless search is on the State. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *Atkins v. State,* 882 S.W.2d 910, 913 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

*Terry* tells us that an officer, without probable cause, may conduct a limited search of the detainee's outer clothing for weapons when specific and articulable facts lead him to reasonably conclude that the person with whom he is dealing is armed and dangerous. *Terry,* 392 U.S. at 29, 88 S.Ct. at 1869. *Terry* further states that those specific facts must amount to more than a mere hunch or suspicion. *Id.,* 392 U.S. at 27, 88 S.Ct. at 1883. The Texas Supreme Court has said that the purpose of a limited weapons search following an investigative stop is not to dis-

---

1. *Terry v. Ohio,* 392 U.S. 1, 27, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968).

2. *Worthey v. State,* 805 S.W.2d 435, 437 (Tex. Crim.App.1991).

cover evidence of a crime, but to allow the police officer to pursue the investigation without fear of violence. *Davis v. State,* 829 S.W.2d 218, 220 (Tex.Crim.App.1992).

The United States Supreme Court set out what is known as the "plain feel doctrine" in *Minnesota v. Dickerson,* —— U.S. ——, —————, 113 S.Ct. 2130, 2137–39, 124 L.Ed.2d 334 (1993). In *Minnesota,* the court held that an officer's continued exploration of the defendant's pocket after the officer determined it contained no weapon was unrelated to the sole justification of the search under *Terry. Id.* at ————, 113 S.Ct. at 2138–39. In *Minnesota,* the officers had responded to complaints of drug sales in an area when they spotted the defendant who made eye contact with one of the officers, and then walked in the opposite direction. *Id.* at ——, 113 S.Ct. at 2133. The officers stopped the defendant and did a patdown search. *Id.* The search revealed no weapons, but the officer conducting the search did take an interest in a small lump in the defendant's nylon jacket that turned out to be a fifth of a gram of crack cocaine. *Id.* We note that in *Minnesota* the officers patted down the outside of the defendant's pocket and did not feel a weapon, but only felt a small lump. *Id.* at ——, 113 S.Ct. at 2133. At that point, the officer then reached into the pocket and pulled the cocaine out. *Id.* The court did not categorically bar the seizure of contraband detected through the sense of touch, but limited an officer's ability to seize an item during a patdown search to those items he could identify without any further invasion of privacy. *Id.* at ——, 113 S.Ct. at 2138.

Recently, the Dallas Court of Appeals considered a case where an officer conducting a patdown search went into the defendant's watch pocket after feeling two small objects and hearing a crackling sound. *Graham v. State,* 893 S.W.2d 4, 6 (Tex.App.—Dallas 1994, no pet.). The court held that the officer exceeded the bounds of *Terry* because he retrieved the object even though the incriminating contents of that object he felt were not immediately apparent to the officer. *Id.* at 8.

In *Worthey,* the Court of Criminal Appeals dealt with a patdown search as applied to a purse. 805 S.W.2d at 438–39. The court held that a warrantless search of a purse is valid when there are articulable facts in the record that justify an officer's self-protective search for weapons. *Id.* In *Worthey,* police described the defendant's purse as normal in size, which the defendant had over her shoulder. *Id.* at 437. The police officer justified his opening the purse and searching inside because the defendant turned the purse away from the officer, obstructing the officer's view of her hand and purse. *Id.* The officer testified that he pressed the sides of the purse, but he could not feel the center. He said something was definitely keeping his fingers and thumb from touching, that "there could have been a weapon inside." *Id.* at 438. The court held the officer's search of the bag was warranted because of the possibility of a weapon and injury to himself and others. *Id.*

A comparison of the *Worthey* facts and those in this case might be helpful.

| Worthey | Pena |
| --- | --- |
| Defendant approached scene of crime, along with others | Defendant seen leaving the scene of the crime, along with others |
| Defendant acted suspiciously by reaching for the purse & turning aside when the officers approached her | No suspicious behavior or threats by the defendant as officers approached her |
| Defendant disobeyed the officer when he told her to keep her hands still | Defendant obeyed the officer and handed her children and her purse to the officers |
| Defendant could have reached inside purse | Defendant could not reach inside purse because she was carrying two infants |

| Worthey | Pena |
|---|---|
| Before feeling the purse the officer thought defendant might have a weapon | Before feeling the purse the officer thought defendant might have a gun |
| Officer felt purse to see if there was a gun inside | Officer felt the purse to see if there was a hard object inside |
| No testimony that officer was looking for evidence | Officer testified they were also looking for evidence |
| Officer felt sides of purse and could not feel the center, said it did not feel soft, that there could have been a weapon inside | Officer felt sides of purse and did not feel a gun or suspicious bulges |
| Officer said the purse did not feel soft, that there could have been a weapon inside | Officer did not say he could feel anything, or that the purse could have contained a gun or other weapon |

The appellant relies on *$2,067.00 in U.S. Currency, 3 Handguns and 51 Capsules v. State,* 745 S.W.2d 109 (Tex.App.—Fort Worth 1988, no pet.). In *$2,067.00 in U.S. Currency,* police saw a handgun in plain view in the trunk of the defendant's car and then conducted a self-protective search of the defendant and her purse, which was also in the trunk. *Id.* at 112. The court held that when searching the defendant's purse, the officer exceeded the scope of a reasonable "stop and frisk" by looking inside three cloth bags in the purse rather than first feeling them for the presence of weapons. *Id.*

The State contends we should apply the reasoning of the Texarkana Court of Appeals in *Earls v. State,* 668 S.W.2d 453 (Tex.App.—Texarkana 1984, no pet.). In *Earls,* the court upheld the search of a purse of a woman in a bar, who matched the description of a person with a firearm. *Id.* at 454. The police asked the defendant if she had a gun. *Id.* The defendant said "no," but the police asked her to open her purse, and she did. *Id.* The officer then found the gun in the purse and arrested the defendant. *Id.* The court considered in its analysis that the defendant turned and walked hurriedly toward the rear of the bar when she saw the officers outside. *Id.*

This Court has considered the issue of a *Terry* frisk for weapons in *Harris v. State,* 827 S.W.2d 49 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). In *Harris,* police discovered, while doing a protective search for weapons, a small metal box in the defendant's pocket. *Id.* at 50. After discovering the box, the police shook it to see if it contained razor blades or anything that could be used to harm the officers. *Id.* The police testified something inside sounded like razors so they looked inside and found seven rocks of crack cocaine. *Id.* This Court held the search exceeded the scope of what was permissible because the record contained no specific and articulated facts justifying the search. *Id.* at 51. This Court held that extending the search to the inside of the small metal box found on the defendant was only based on a suspicion or hunch. *Id.* Additionally, this Court determined it was unreasonable for a group of armed police officers to fear a razor blade inside a small box. *Id.* at 52.

I find the crucial elements in *Terry* search and seizure cases are the specific facts articulated by the officers stating why they felt threatened by the person being searched. In this case, the record shows the officers were investigating a shooting. They had reason to believe the appellant shot her husband and was armed and dangerous. They did not find any weapons on her, and did not feel any weapons in her purse. The officers did not believe the appellant had a weapon in the purse. I find the officer's right to search the appellant's purse for safety reasons ended when he determined there was no weapon in the purse after feeling the outside. The

record does not present us with articulable facts as to why the officers went beyond a patdown search of the appellant's purse.

I would reverse.

HUTSON–DUNN and ANDELL, JJ., join in this opinion.