02-11-280-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00280-CR

 

 


 
 
 Michael Jay Komoroski
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM County
Criminal Court No. 3 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

Appellant
Michael Jay Komoroski appeals his conviction for driving while intoxicated.[2] 
In his sole point, Komoroski contends that because the arresting officer lacked
reasonable suspicion to execute the traffic stop that ultimately led to
Komoroski’s arrest and conviction, the trial court abused its discretion by
denying his motion to suppress.  We will affirm.

II.  Background

On
the night of July 24, 2009, Euless Police Officer Paul Coffee[3]
pulled up to a traffic light alongside a vehicle he recognized.  Coffee
testified at the suppression hearing that he also recognized the driver
immediately.[4]  Coffee said that
Komoroski attempted to go unnoticed by Coffee:

He looked over at me,
recognized me, which I believe he recognized me, made a head movement as to -- I 
don’t know how to describe the head movement, but kind of put his head down to
the side, then held his head straightforward hoping I wouldn't -- hoping
I wasn’t recognizing him, what it appeared to me.

By
Coffee’s account, he was well acquainted with Komoroski, “From personal
experience, I’ve known him for a long time.”  Coffee said that he had “[e]xtensive
dealings” with Komoroski over the last four years—roughly thirty to forty
encounters.  Most recently, several weeks prior to Coffee seeing Komoroski alongside
him, Coffee arrested Komoroski in connection with a domestic disturbance. 
During that arrest, Komoroski did not have any identification—including a valid
driver’s license.  Coffee said that over the last four years, and during his
numerous encounters with Komoroski, Komoroski had never obtained a driver’s
license.  According to Coffee, he had urged Komoroski several times to obtain one,
but Komoroski always gave an excuse for not having one or not obtaining one. 
Coffee said that his knowledge that Komoroski had never possessed a valid
driver’s license, coupled with the manner in which Komoroski acted when Coffee
pulled up alongside him, led Coffee to believe that Komoroski was in fact operating
a motor vehicle without a license.  In short, Coffee said, “I knew he was
driving without a license.”  Coffee initiated a traffic stop.  After the stop,
Coffee determined that Komoroski was driving while intoxicated.

          The
trial court denied Komoroski’s motion to suppress.  Komoroski then entered a
plea of guilty to driving while intoxicated.  The court assessed punishment at
ninety days’ confinement in jail and a $550 fine, but it suspended the jail
sentence in lieu of two years’ community supervision.  This appeal followed.

III.  Discussion

In
his sole point, Komoroski argues that the detaining officer lacked reasonable
suspicion to initiate a stop.  Komoroski argues that the trial court therefore abused
its discretion by denying his motion to suppress all evidence gathered after
the stop.

1.       Standard
of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give
almost total deference to the trial court’s rulings on (1) questions of historical
fact, even if the trial court’s determination of those facts was not based on
an evaluation of credibility and demeanor, and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim.
App. 2006); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App.
2002).  But when application-of-law-to-fact questions do not turn on the
credibility and demeanor of the witnesses, we review the trial court’s rulings
on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652–53.

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  In this case, the record is silent on the reasons
for the trial court’s ruling; therefore, we imply the necessary fact findings
that would support the trial court’s ruling if the evidence, viewed in the
light most favorable to the trial court’s ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see Wiede,
214 S.W.3d at 25.  We then review the trial court’s legal ruling de novo
unless the implied fact findings supported by the record are also dispositive
of the legal ruling.  Kelly, 204 S.W.3d at 819.

2.       Reasonable
Suspicion

The
Fourth Amendment protects against unreasonable searches and seizures by
government actors.  U.S. Const. amend. IV; Wiede, 214 S.W.3d at 24.  Because
this was a warrantless search, the search is presumptively unreasonable, and
the State has the burden to rebut that presumption.  Ford v. State, 158
S.W.3d 488, 492 (Tex. Crim. App. 2005).  A search or seizure must be reasonable
both at its inception and in its scope.  Terry v. Ohio, 392 U.S. 1, 28–29,
88 S. Ct. 1868, 1883–84 (1968).  The scope is limited to effectuating the
reason for the stop.  Id.

A
detention, as opposed to an arrest, may be justified on less than probable
cause if a person is reasonably suspected of criminal activity based on
specific, articulable facts.  Terry, 392 U.S. at 21–22, 88 S. Ct.
at 1880; Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).  An
officer conducts a lawful temporary stop or detention when he has reasonable
suspicion to believe that an individual is violating the law.  Ford, 158
S.W.3d at 492.  Reasonable suspicion exists when, based on the totality of the
circumstances, the officer has specific, articulable facts that when combined
with rational inferences from those facts, would lead him to reasonably
conclude that a particular person is, has been, or soon will be engaged in
criminal activity.  Id. at 492–93.  Officers must point to particular
facts and inferences rationally drawn from those facts that, when viewed under
the totality of the circumstances and in light of the officer’s experience,
create a reasonable suspicion of criminal activity.  United States v.
Sokolow, 490 U.S. 1, 7–8, 109 S. Ct. 1581, 1585 (1989).  This is an
objective standard that disregards any subjective intent of the officer making
the detention and looks solely to whether an objective basis for the detention
exists.  Ford, 158 S.W.3d at 492.  We look at only those facts known to
the officer at the inception of the detention.  State v. Griffey, 241
S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref’d).

When
making a determination of reasonable suspicion, “the relevant inquiry is not
whether particular conduct is ‘innocent’ or ‘guilty,’ but the degree of
suspicion that attaches to particular types of noncriminal acts.”  Sokolow,
490 U.S. at 10, 109 S. Ct. at 1587 (quoting Illinois v. Gates, 462
U.S. 213, 243–44 n.13, 103 S. Ct. 2317, 2335 n.13 (1983)); Woods v.
State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).  “[W]hen used by trained
law enforcement officers, objective facts, meaningless to the untrained, can be
combined with permissible deductions from such facts to form a legitimate basis
for suspicion of a particular person.”  Woods, 956 S.W.2d at 37–38 (quoting
United States v. Cortez, 449 U.S. 411, 419, 101 S. Ct. 690, 695–96 (1981)).

An
individual’s behavior can be a factor in determining the existence of
reasonable suspicion.  Illinois v. Wardlow, 528 U.S. 119, 124–25, 120 S. Ct.
673, 676 (2000).  Evidence of nervousness, furtive gestures, sudden movements,
or flight alone may be innocent, but if these actions are combined with other
factors, they can give rise to reasonable suspicion.  Id.; Worthey v.
State, 805 S.W.2d 435, 438–39 (Tex. Crim. App. 1991).  And officers may
rely on their training, knowledge, and law enforcement experience to reach
their level of suspicion.  Cortez, 449 U.S. at 419, 101 S. Ct. at
695–96; Wiede, 214 S.W.3d at 25.

          3.       Coffee
Possessed Reasonable Suspicion to Stop Komoroski

In
this case, based on the totality of the circumstances and in light of Coffee’s
training and experience, we conclude that Coffee possessed specific,
articulable facts that when combined with rational inferences from those facts,
would lead him to reasonably conclude that Komoroski was driving without a
valid driver’s license.  See Tex. Transp. Code Ann. § 521.021 (West
2007).  Coffee recognized Komoroski immediately upon seeing him alongside his
patrol car.  He knew from extensive past experiences that despite his repeated
encouragements that Komoroski get a driver’s license, each of Coffee’s
subsequent encounters verified that Komoroski had not obtained one.  Coffee’s
recent encounter with Komoroski several weeks prior only served to reinforce
this pattern—Komoroski did not have a driver’s license or any form of
identification when Coffee arrested him then.  The rational inference from the
fact that he had repeatedly prodded Komoroski to get a license and yet he had
not, would be to believe that upon seeing Komoroski driving, Komoroski was
driving without a license.  Adding to this suspicion, Coffee described
Komoroski’s conduct in the car as Komoroski attempting to avoid Coffee and keep
Coffee from recognizing him.  See Worthey, 805 S.W.2d at 439 (reasoning that
officer’s observation of defendant’s sudden movement to hide her purse from
officer’s view with her arm a factor in determining reasonable suspicion). 
Coupling these articulable facts together, we conclude that Coffee possessed
reasonable suspicion that Komoroski was driving without a valid driver’s
license.  See Williams v. State, No. 11-05-00102-CR, 2006 WL
3690683, at *1–*2 (Tex. App.—Eastland Dec. 14, 2006, no pet.) (not
designated for publication) (holding that reasonable suspicion existed to justify
traffic stop when officer observed defendant, as he passed officer in his car,
duck his head in a manner indicating to the officer a desire not to be seen by
officer and officer reasonably believed, based on encounter with defendant the day
before, that defendant’s license was suspended); see also Barrett v. State,
718 S.W.2d 888, 889–90 (Tex. App.—Beaumont 1986, pet. ref’d) (holding that
defendant’s stopping of his vehicle one hundred feet behind the stop line for a
red light and behind a police car in the adjacent lane, created reasonable
suspicion that defendant intended to avoid the police, justifying a Terry
detention).  Thus, Coffee did not err by initiating the traffic stop.  We hold
that the trial court did not abuse its discretion by overruling Komoroski’s
motion to suppress.  We overrule Komoroski’s sole point.

IV.  Conclusion

Having overruled Komoroski’s sole point on
appeal, we affirm the trial court’s order.

 

 

BILL MEIER
JUSTICE

 

PANEL:  GARDNER, WALKER, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
May 31, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 49.04 (West Supp. 2011).





[3]The record reveals that
Coffee is a six-year veteran of the Euless Police Department and that prior to
his work in Euless, Coffee previously worked as a police officer with the City
of Bedford for more than seven years.





[4]Both parties agree that
the scope of the suppression hearing and the scope of this appeal is related to
whether Coffee possessed the proper level of suspicion to initiate the traffic
stop of Komoroski.