**Thomas Riley BARRETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–85–216 CR.**

Court of Appeals of Texas, Beaumont.

Oct. 15, 1986.

Louis Dugas, Jr., Orange, for appellant.

Stephen C. Howard, Co. Atty., Orange, for appellee.

## OPINION

PER CURIAM.

Appellant pled guilty to possession of cocaine and was sentenced to five years in the Department of Corrections as recommended under his plea bargain. He appeals that conviction on the basis of his written pre-trial motion to suppress. TEX. CODE CRIM.PROC.ANN. art. 44.02 (Vernon Supp.1986).

Highway patrol officers were stopped at a red signal when, according to their testimony, appellant stopped his vehicle some 100 feet away from the marked white line.

After the light changed, the officers remained still and appellant proceeded through the intersection. The officers testified they stopped appellant's vehicle because they felt he had committed a traffic offense for failing to stop at the designated point. After being stopped, appellant failed to produce his driver's license. Upon investigation, the officers learned that appellant's license was suspended. They arrested him for failure to stop at a designated point and driving with a suspended license. The officers impounded the car. One of the officers testified that he asked appellant if he had a preference as to wrecker services, but received no response. Approximately one hour after arresting appellant and delivering him to jail, they returned to the scene and inventoried the auto's contents, discovering two sealed manilla envelopes that had a "soft and powdery feeling". Upon opening them, they discovered cocaine. They completed the inventory and released the vehicle to the wrecker service.

Appellant alleges his arrest was illegal because it was made without probable cause. He then challenges the impoundment on grounds the state did not sufficiently justify it nor follow its own inventory procedure. All of these grounds were couched in one ground of error urging reversal for denial of the motion to suppress.

Appellant was initially stopped for violating *TEX.REV.CIV.STAT.ANN. art. 6701d, sec. 33(c)(1)* (Vernon 1977), which provides:

> Vehicular traffic facing a steady red signal alone shall stop at a clearly marked stop line, but, if none, before entering the crosswalk on the near side of the intersection....

■ Appellant contends that this section does not prohibit stopping 100 feet behind the stop line. We disagree. To do otherwise would disregard its wording requiring the stop to be made *at,* rather than *before,* a clearly marked stop line. Furthermore, *TEX.REV.CIV.STAT.ANN. art. 6701d, sec. 33(d)* (Vernon 1977), reinforces this literal reading of the legislature's intent by requiring stops for signals not at intersections to be made *"at* the signal" if the stopping point is not otherwise indicated. (Emphasis added.) Because appellant failed to stop at the designated point, he was lawfully arrested under the provision in *TEX.REV.CIV.STAT.ANN. art. 6701d, sec. 153* (Vernon 1977).

■ The initial stop of appellant's vehicle would still be warranted even if we did not agree with the meaning the officer gave to *article 6701d, sec. 33(c)(1).* His reading, though in error, would have been a good faith, reasonable interpretation of the statute that, under the circumstances, independently justified detaining the appellant long enough to ask for his driver's license and proof of insurance. *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Greer v. State,* 544 S.W.2d 125 (Tex.Crim.App.1976). Furthermore, the investigatory stop of appellant's vehicle would have been valid in the absence of any state traffic regulation pertaining to his operation of his vehicle on the night he was arrested.

■ Appellant completely stopped 100 feet behind a patrol car clearly marked with emergency lights. It was late at night. No other cars were on the road. Such an action created a reasonable suspicion that the appellant intended to avoid the officers or needed assistance and, therefore, justified the minimal intrusion of a brief investigatory detention. *United States v. Sharpe, supra; Terry v. Ohio, supra; Greer v. State, supra.* The subsequent discovery that appellant was driving without his driver's license on his person and that the missing license was suspended justified his arrest.

Appellant claims that the cocaine should have been suppressed independent of his arrest because his automobile was illegally impounded while alternatives existed for its protection. He relies upon *Benavides v. State,* 600 S.W.2d 809 (Tex.Crim.App.1980) for the proposition that the state has a burden to actively seek out alternatives to

impoundment even though they are not available contemporaneous with the state's assumption of control over an individual's automobile. We disagree.

■■■ Appellant was alone in his car when arrested. Since one of the grounds of arrest was driving with a suspended license, it was clear he could not assume control of the vehicle when and if he was able to post bond for his offenses. His arrest occurred late at night, a time when leaving his car on the side of the highway would make it most vulnerable to "damage, vandalism, or theft." *Evers v. State*, 576 S.W.2d 46, 50 (Tex.Crim.App.1978). The officer's initial inspection of the vehicle revealed articles of clothing and papers which supported his decision to protect the vehicle. In short, the decision to impound the car and to have it towed to a safer place was well founded. The officers had no duty to attempt to contact a member of appellant's family before they assumed control over it. *Evers v. State, supra; Wallis v. State*, 636 S.W.2d 1, 2 (Tex.App. —Dallas 1982, no pet.).

The written policy of the Department of Public Safety does not alter this conclusion. It provides:

> When any employee of this Department, acting in official capacity, assumes control of a vehicle belonging to another, the primary concern shall be to provide the greatest protection for the vehicle and its contents at the lowest practical cost to the owner. The owner's desires and welfare shall receive prime consideration when determining the method of transporting a vehicle to the place of storage. When [sic] officer's safety permits and it is practicable to do so, a violator's vehicle may be driven to safe storage to prevent towing costs.

That policy was followed in this case. The decision to have the appellant's car towed to a storage area struck a proper cost—benefit balance. This is especially so in light of testimony that appellant did not respond to the opportunity to designate a wrecker to tow his car. Finally, the policy does not require an officer to drive im-pounded cars to safe storage. Testimony revealed that the officers were uncertain whether they had adequate insurance to chauffeur appellant's car. This made such permitted transportation impractical.

■■■ Appellant contends that the time intervening between impound and inventory was also impermissible under department policy which required property coming into its "care, custody, or control" to "be inventoried as soon as is practicable...." Approximately one-hour elapsed during the time the officers initially locked the car, transported appellant to jail, and returned to the scene to inventory the vehicle's contents.

Although we do not condone the one-hour delay (the officers went to eat), we are unwilling to suppress the resulting discovery of the cocaine due to this delay. Given ideal circumstances, and the rationale for the impoundment and inventory of vehicles, the two acts should be as contemporaneous as possible to afford maximum protection to the individual, the state, and police officers. The delay in this case, however, neither created a duty for the police officers to seek an alternative to impoundment nor undermined the reason for initially impounding appellant's car. Even if it had been an infraction of the department's policy, appellant has pointed to no authority requiring evidence to be suppressed without considering whether suppression would serve to correct erroneous police procedures.

For the above reasons, appellant's ground of error is overruled and his conviction affirmed.

AFFIRMED.