

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00280-CR

MICHAEL JAY KOMOROSKI                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Michael Jay Komoroski appeals his conviction for driving while intoxicated.[2]  In his sole point, Komoroski contends that because the arresting officer lacked reasonable suspicion to execute the traffic stop that ultimately led

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. § 49.04 (West Supp. 2011).

to Komoroski's arrest and conviction, the trial court abused its discretion by denying his motion to suppress. We will affirm.

## II. BACKGROUND

On the night of July 24, 2009, Euless Police Officer Paul Coffee[3] pulled up to a traffic light alongside a vehicle he recognized. Coffee testified at the suppression hearing that he also recognized the driver immediately.[4] Coffee said that Komoroski attempted to go unnoticed by Coffee:

> He looked over at me, recognized me, which I believe he recognized me, made a head movement as to -- I don't know how to describe the head movement, but kind of put his head down to the side, then held his head straightforward hoping I wouldn't -- hoping I wasn't recognizing him, what it appeared to me.

By Coffee's account, he was well acquainted with Komoroski, "From personal experience, I've known him for a long time." Coffee said that he had "[e]xtensive dealings" with Komoroski over the last four years—roughly thirty to forty encounters. Most recently, several weeks prior to Coffee seeing Komoroski alongside him, Coffee arrested Komoroski in connection with a domestic disturbance. During that arrest, Komoroski did not have any identification—including a valid driver's license. Coffee said that over the last four years, and

---

[3]The record reveals that Coffee is a six-year veteran of the Euless Police Department and that prior to his work in Euless, Coffee previously worked as a police officer with the City of Bedford for more than seven years.

[4]Both parties agree that the scope of the suppression hearing and the scope of this appeal is related to whether Coffee possessed the proper level of suspicion to initiate the traffic stop of Komoroski.

during his numerous encounters with Komoroski, Komoroski had never obtained a driver's license.  According to Coffee, he had urged Komoroski several times to obtain one, but Komoroski always gave an excuse for not having one or not obtaining one.  Coffee said that his knowledge that Komoroski had never possessed a valid driver's license, coupled with the manner in which Komoroski acted when Coffee pulled up alongside him, led Coffee to believe that Komoroski was in fact operating a motor vehicle without a license.  In short, Coffee said, "I knew he was driving without a license."  Coffee initiated a traffic stop.  After the stop, Coffee determined that Komoroski was driving while intoxicated.

The trial court denied Komoroski's motion to suppress.  Komoroski then entered a plea of guilty to driving while intoxicated.  The court assessed punishment at ninety days' confinement in jail and a $550 fine, but it suspended the jail sentence in lieu of two years' community supervision.  This appeal followed.

### III. DISCUSSION

In his sole point, Komoroski argues that the detaining officer lacked reasonable suspicion to initiate a stop.  Komoroski argues that the trial court therefore abused its discretion by denying his motion to suppress all evidence gathered after the stop.

#### 1. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex.

3

Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). In this case, the record is silent on the reasons for the

4

trial court's ruling; therefore, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

### 2. Reasonable Suspicion

The Fourth Amendment protects against unreasonable searches and seizures by government actors. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. Because this was a warrantless search, the search is presumptively unreasonable, and the State has the burden to rebut that presumption. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A search or seizure must be reasonable both at its inception and in its scope. *Terry v. Ohio*, 392 U.S. 1, 28–29, 88 S. Ct. 1868, 1883–84 (1968). The scope is limited to effectuating the reason for the stop. *Id.*

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry*, 392 U.S. at 21–22, 88 S. Ct. at 1880; *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary stop or detention when he has reasonable suspicion to believe that an individual is violating the law. *Ford*, 158 S.W.3d at 492.

5

Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id.* at 492–93. Officers must point to particular facts and inferences rationally drawn from those facts that, when viewed under the totality of the circumstances and in light of the officer's experience, create a reasonable suspicion of criminal activity. *United States v. Sokolow*, 490 U.S. 1, 7–8, 109 S. Ct. 1581, 1585 (1989). This is an objective standard that disregards any subjective intent of the officer making the detention and looks solely to whether an objective basis for the detention exists. *Ford*, 158 S.W.3d at 492. We look at only those facts known to the officer at the inception of the detention. *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd).

When making a determination of reasonable suspicion, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Sokolow*, 490 U.S. at 10, 109 S. Ct. at 1587 (*quoting Illinois v. Gates*, 462 U.S. 213, 243–44 n.13, 103 S. Ct. 2317, 2335 n.13 (1983)); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). "[W]hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular

6

person." *Woods*, 956 S.W.2d at 37–38 (*quoting United States v. Cortez*, 449 U.S. 411, 419, 101 S. Ct. 690, 695–96 (1981)).

An individual's behavior can be a factor in determining the existence of reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S. Ct. 673, 676 (2000). Evidence of nervousness, furtive gestures, sudden movements, or flight alone may be innocent, but if these actions are combined with other factors, they can give rise to reasonable suspicion. *Id.*; *Worthey v. State*, 805 S.W.2d 435, 438–39 (Tex. Crim. App. 1991). And officers may rely on their training, knowledge, and law enforcement experience to reach their level of suspicion. *Cortez*, 449 U.S. at 419, 101 S. Ct. at 695–96; *Wiede*, 214 S.W.3d at 25.

### 3. Coffee Possessed Reasonable Suspicion to Stop Komoroski

In this case, based on the totality of the circumstances and in light of Coffee's training and experience, we conclude that Coffee possessed specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that Komoroski was driving without a valid driver's license. *See* Tex. Transp. Code Ann. § 521.021 (West 2007). Coffee recognized Komoroski immediately upon seeing him alongside his patrol car. He knew from extensive past experiences that despite his repeated encouragements that Komoroski get a driver's license, each of Coffee's subsequent encounters verified that Komoroski had not obtained one. Coffee's recent encounter with Komoroski several weeks prior only served to reinforce this pattern—Komoroski did not have a driver's license or any form of identification

7

when Coffee arrested him then. The rational inference from the fact that he had repeatedly prodded Komoroski to get a license and yet he had not, would be to believe that upon seeing Komoroski driving, Komoroski was driving without a license. Adding to this suspicion, Coffee described Komoroski's conduct in the car as Komoroski attempting to avoid Coffee and keep Coffee from recognizing him. *See Worthey*, 805 S.W.2d at 439 (reasoning that officer's observation of defendant's sudden movement to hide her purse from officer's view with her arm a factor in determining reasonable suspicion). Coupling these articulable facts together, we conclude that Coffee possessed reasonable suspicion that Komoroski was driving without a valid driver's license. *See Williams v. State*, No. 11-05-00102-CR, 2006 WL 3690683, at *1–*2 (Tex. App.—Eastland Dec. 14, 2006, no pet.) (not designated for publication) (holding that reasonable suspicion existed to justify traffic stop when officer observed defendant, as he passed officer in his car, duck his head in a manner indicating to the officer a desire not to be seen by officer and officer reasonably believed, based on encounter with defendant the day before, that defendant's license was suspended); *see also Barrett v. State*, 718 S.W.2d 888, 889–90 (Tex. App.—Beaumont 1986, pet. ref'd) (holding that defendant's stopping of his vehicle one hundred feet behind the stop line for a red light and behind a police car in the adjacent lane, created reasonable suspicion that defendant intended to avoid the police, justifying a *Terry* detention). Thus, Coffee did not err by initiating the traffic stop. We hold

8

that the trial court did not abuse its discretion by overruling Komoroski's motion to suppress. We overrule Komoroski's sole point.

## IV. CONCLUSION

Having overruled Komoroski's sole point on appeal, we affirm the trial court's order.

BILL MEIER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 31, 2012