

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00368-CR

John Christopher **SPRINGALL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. DC-5316
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  June 24, 2015

AFFIRMED

John Christopher Springall was convicted of possession of a controlled substance, methamphetamine, in an amount more than four but less than two hundred grams and sentenced to twenty-nine years in prison. On appeal, Springall argues the trial court erred by failing to sustain his objections to the evidence found in an inventory search of the vehicle he was driving at the time of his arrest. The State counters that the trial court did not err in overruling the objections because the inventory search, which it claims was conducted pursuant to the vehicle's impoundment and in accordance with the sheriff department's policy, was lawful. We affirm.

**BACKGROUND**

On July 30, 2012, Springall was driving on Meusebach Creek Road in Gillespie County, Texas, when he came upon a sheriff's patrol car partially blocking the road. In the distance, a vehicle was on fire and the sheriff's deputies were restricting access to the area. Firefighters were on the scene trying to extinguish the fire. When Springall encountered the patrol car, he stopped his vehicle and spoke to a deputy. At the deputy's request, Springall produced his driver's license. The deputy checked the status of the license and learned it was not valid. Springall was then directed to turn his vehicle around and park it on the side of the road. After Springall parked his vehicle as directed, a deputy arrested him for driving without a valid license, placed him in the patrol car, and transported him to jail. Other deputies performed an inventory search of the vehicle, then released it to a towing company. During the inventory search, the deputies found almost five grams of methamphetamine as well as other drugs and drug paraphernalia.

Springall was subsequently indicted for possession of a controlled substance and pled not guilty. At trial, Springall objected to the admission of the methamphetamine and the other evidence found in the inventory search asserting the deputies had "no authority to search the vehicle at all, inventory or any other reason." In response, the State asserted that the evidence was admissible because the vehicle was impounded and the deputies acted in accordance with the department's written inventory policy. Outside the presence of the jury, the trial court held a hearing on the lawfulness of the inventory search.

Three witnesses testified about the impoundment and inventory of the vehicle. The first witness was the arresting officer, Gillespie County Sheriff's Deputy Justin Cole. Cole testified that he arrested Springall on July 30, 2012. At the time, Cole had been a sheriff's deputy for only seven months. For training purposes, another officer, Sergeant Ahrens, was accompanying him. Cole had been dispatched to the site of a fire on Meusebach Creek Road to control traffic in the area.

Springall drove up to the area and stopped behind Cole's patrol car. Cole approached Springall's vehicle and asked Springall for his driver's license. Cole then ran Springall's driver's license number through dispatch and it came up invalid. Cole advised Springall of the status of his license and Springall was asked to move his vehicle so he was not blocking the road. After Springall moved his vehicle, Cole asked him to step out of his vehicle. Cole noticed that Springall's hands were shaking and heard him say that he wanted to have someone pick up his vehicle. Springall also asked if he could lock his vehicle and leave it there. Cole then arrested Springall for driving while his license was invalid and transported him to the Gillespie County jail. The vehicle Springall was driving at the time of his arrest was inventoried and released to Vierus Towing. Cole learned about the methamphetamine, other drugs, and drug paraphernalia after the inventory was completed. Cole also testified that the Gillespie County Sheriff's Department had a procedure for inventorying an impounded vehicle, and that his patrol car was equipped with a videocamera that recorded the deputies' interaction with Springall.

Gillespie County Sheriff's Deputy Delario Villa testified that he was dispatched to Meuseback Creek Road on July 30, 2012. According to Villa, Cole had arrested Springall, and then Cole and Ahrens had requested another officer on the scene to help with the inventory of a vehicle. Villa helped Ahrens conduct the vehicle inventory. Villa explained that a vehicle inventory involves documenting the property in the vehicle. Villa testified in detail about the items found in the inventory of the vehicle driven by Springall. Villa testified that the vehicle was in fact impounded.

Sergeant Wesley Rheinhardt testified that Ahrens contacted him on July 30, 2012, and asked him to assist in the inventory of the vehicle. At the time, he was conducting a special patrol in the area, where there had recently been a lot of burglaries. When Rheinhardt arrived on the scene, Ahrens and Villa were almost finished with the inventory. After the inventory, the vehicle,

a green GMC Blazer, was impounded in accordance with department policy. When asked how officers make the decision to impound a vehicle, Rheinhardt initially testified that department policy required officers to impound a vehicle any time an arrest is made and a vehicle would be left on the side of the road. However, Rheinhardt later testified that road conditions were a factor that would affect an officer's decision to impound a vehicle and that a fire on the road would play a part in any such decision.

Ahrens did not testify.

The written arrest procedures of the Gillespie County Sheriff's Department were admitted into evidence. These procedures provide that "a deputy will complete an arrest by making arrangements for the security of the suspect's motor vehicle." They further provide:

> When an arrest is made and the vehicle is to be impounded, an impound inventory shall be conducted. An inventory **is not** a "Search" and the requirement for an inventory does not provide an exception to the requirements of consent or probable cause or a search warrant of open containers. If new facts are developed through an inventory of an impounded vehicle, appropriate changes in the dispositions of the subjects arrested should be made.

> The Gillespie County Sheriff's Office Vehicle Inventory Forms are to be utilized and filled out in their entirety by the inventorying deputy, with the original copy attached to the offense/arrest report, and the second and third copy going to the towing agency. The towing agency will provide the driver or registered owner of the impounded vehicle with a copy of the inventory, when the vehicle is picked up and released.

Finally, the State offered, and the trial court admitted, the recording from the videocamera in the patrol car.[1] At the conclusion of the hearing, the prosecutor argued, "[G]iven the totality of the circumstances, when you have a vehicle that's pulled over on the side of the road and there is an active fire in the area . . . and coupled with the fact that there were valuables in the vehicle . . .

---

[1]Few actions of the deputies and Springall were captured on the video recording, which primarily shows the vehicle fire and smoke in the distance. On the other hand, the audio recording captured much of the conversations Cole and Ahrens had with Springall and with each other.

and I think with Sergeant Rhienhardt's testimony that there were burglaries in the area . . . I think it was prudent and proper for law enforcement to go ahead and impound that vehicle for safekeeping, to protect it." The trial court concluded that the inventory search was lawful, overruled Springall's objections to the evidence found in the inventory search, and admitted the evidence at trial. Neither party requested findings of fact and conclusions of law. The jury found Springall guilty as charged in the indictment.

## STANDARD OF REVIEW

We apply the same standard of review to suppression issues litigated during trial as we apply to a pretrial motion to suppress. *State v. Five Thousand Five Hundred Dollars in U.S. Currency*, 296 S.W.3d 696, 702 n.3 (Tex. App.—El Paso 2009, no pet.). We review a trial court's ruling on a motion to suppress for an abuse of discretion under a bifurcated standard of review. *Hernandez v. State*, 387 S.W.3d 881, 884 (Tex. App.—San Antonio 2012, no pet.). Under a bifurcated standard, we afford almost total deference to the trial court's determination of the historical facts that the record supports. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same amount of deference to the trial court's rulings on "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id*. However, we review de novo "mixed questions of law and fact" that do not fall within this category. *Id*.

When, as here, the trial court does not make findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling, as long as such implicit findings are supported by the record. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). The party who prevailed in the trial court is afforded the strongest legitimate view of the evidence and all the reasonable inferences that may be drawn from that evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

We must uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Hernandez*, 387 S.W.3d at 885; *State v. Cook*, 389 S.W.3d 376, 380 (Tex. App.—Texarkana 2012, no pet.).

### IMPOUNDMENT AND INVENTORY

Inventory searches serve to protect (1) the owner's property while it is in police custody, (2) the police against claims or disputes over lost or stolen property, and (3) the police and the public from potential danger. *S. Dakota v. Opperman*, 428 U.S. 364, 369 (1976). An inventory search is permissible under the state and federal constitutions if it is conducted pursuant to a lawful impoundment. *Id.* at 370-71; *Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980). An impoundment is lawful if the driver is removed from his vehicle and placed under custodial arrest and no other alternatives are available other than impoundment to ensure the protection of the vehicle. *Benavides*, 600 S.W.2d at 811 "Texas courts have generally found impoundment to be reasonable when the driver was alone when arrested or when passengers could not show they were licensed drivers." *Yaws v. State*, 38 S.W.3d 720, 724 (Tex. App.—Texarkana 2001, pet. ref'd). "Courts have not required police to try to contact a relative or friend of the accused to come to the scene to take possession of the vehicle." *Id.*; *see Mayberry v. State*, 830 S.W.2d 176, 180 (Tex. App.—Dallas 1992, pet. ref'd) (holding the State met its burden to show that impoundment was lawful when the arrestee was alone and no one was readily available to take care of the car). An inventory search is not unlawful simply because it is conducted before the vehicle is actually towed and impounded. *Daniels v. State*, 600 S.W.2d 813, 815 (Tex. Crim. App. 1980); *see Evers v. State*, 576 S.W.2d 46, 47, 49-50 (Tex. Crim. App. 1978).

The State bears the burden of proving that an impoundment is lawful and may satisfy its burden by showing that (1) the driver was arrested, (2) no alternatives other than impoundment were available to ensure the automobile's protection, (3) the impounding agency had an inventory

policy, and (4) the policy was followed. *Delgado v. State*, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986); *Cook*, 389 S.W.3d at 380; *Garza v. State*, 137 S.W.3d 878, 882 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). The State need not prove that the impoundment and corresponding inventory was the least intrusive means of securing the vehicle and keeping it safe, nor must the State prove that the officers independently investigated possible alternatives to impoundment. *Moskey v. State*, 333 S.W.3d 696 700 (Tex. App.—Houston [1st Dist.] 2010, no pet.). On the other hand, an inventory search is not permissible if it is "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

## ANALYSIS

On appeal, Springall argues the trial court erred in ruling that the evidence found during the inventory of the vehicle, including the methamphetamine, was admissible. The State counters that the trial court did not err in ruling the evidence admissible because it met its burden to establish that the impoundment and the inventory of the vehicle were lawfully conducted. As previously stated, the State may satisfy its burden to prove a lawful impoundment by showing that (1) the driver was arrested, (2) no alternatives other than impoundment were available to ensure the automobile's protection, (3) the impounding agency had an inventory policy, and (4) the policy was followed. *Cook*, 389 S.W.3d at 380; *Garza*, 137 S.W.3d at 882.

Affording the trial court's ruling the strongest legitimate view of the evidence and all the reasonable inferences that may be drawn from that evidence, we conclude that the trial court could have found that the State met its burden to establish that the impoundment and inventory were lawfully conducted. In his briefing, Springall does not argue that the State failed to meet its burden as to the first and third elements of the test, namely, that Springall was arrested and that the sheriff's department had an inventory policy. Instead, Springall argues the State failed to prove that no

alternatives other than impoundment were available and that the department's inventory policy was followed.

### *Alternatives to Impoundment*

To the extent Springall argues that the State failed to meet its burden as to the second element, that no alternatives to impoundment were available, we reject this argument. Texas courts have generally found impoundment to be reasonable when the driver was alone when arrested. *Yaws*, 38 S.W.3d at 724; *Barrett v. State*, 718 S.W.2d 888, 891 (Tex. App.—Beaumont 1986, pet. ref'd). And, Texas courts have not required police to try to contact a relative or friend of the accused to come to the scene to take possession of the vehicle. *Yaws*, 38 S.W.3d at 724; *Mayberry*, 830 S.W.2d at 180. For example, in *Barrett*, the defendant challenged the impoundment of his vehicle on grounds that it was not justified. 718 S.W.2d at 891. The court of appeals disagreed, concluding that the decision to impound the vehicle and tow it to a safer location was well founded. *Id*. In *Barrett*, the defendant was alone in his car when he was arrested for several offenses, including driving with a suspended license. *Id*. Because the defendant was arrested for driving without a license, he could not lawfully assume control of his vehicle, even if he posted bond and was released. *Id*. Furthermore, the defendant was arrested at night, at a time when leaving his car on the side of the highway would make it most vulnerable to damage, vandalism, or theft. *Id*. The officer also saw that there were articles of clothing and papers in the vehicle, which further supported his decision to protect the vehicle. *Id*. The court of appeals expressly noted that "[t]he officers had no duty to attempt to contact a member of the appellant's family before they assumed control over [the vehicle]." *Id*.

Springall, who was arrested during the day, contends that this case is distinguishable from *Barrett*, where the defendant was arrested at night. Nevertheless, like the defendant in *Barrett*, Springall was alone in his vehicle when he was arrested for driving with an invalid license. The

deputies had no duty to attempt to contact a member of Springall's family before they assumed control over the vehicle he was driving. *See Barrett*, 718 S.W.2d at 891; *Moskey*, 333 S.W.3d at 700.

Springall further contends this case is distinguishable from two other cases, *Delgado* and *Yaws*. In each case, the impoundment of the arrestee's vehicle was held to be lawful. In *Delgado*, the Texas Court of Criminal Appeals held that an impoundment was justified over leaving the arrestee's vehicle parked in front of an apartment "where a known drug user lived and where there had been 'lots of traffic.'" 718 S.W.2d at 721. In *Yaws*, the court of appeals rejected the defendant's argument that the officers ignored the reasonable alternative of having his wife come to the scene to pick up his truck. 38 S.W.3d at 724-25. The court explained that such a requirement could result in the police remaining at the scene longer than reasonably necessary. *Id*. at 725. The court also noted that the truck was parked on the property of a third party with whom the defendant had recently had a dispute and the officers were obligated to protect the truck and its contents. *Id*. at 724-25.

We disagree with Springall that *Delgado* and *Yaws* demonstrate that the impoundment was unjustified in this case. When Springall was arrested there was a vehicle fire on the road and the officers were performing traffic control. The fire increased the need to protect the vehicle and its contents and also added a public safety factor to the equation. Emergency vehicles had already passed by the area where Springall's vehicle was parked, and it was possible that emergency vehicles would have to pass through the area again. Thus, the deputies could have decided that it was best to keep the roadside unobstructed for public safety reasons. These circumstances also made the retrieval of the vehicle by a family member, and any associated delay, unreasonable. And, finally, when asked about the contents of the car, Springall said it contained jewelry. This information, coupled with evidence that there had recently been an increase in the number of

burglaries in the area, was yet another circumstance that supported the decision to impound the vehicle.

We conclude that the record supports the trial court's implied finding that no alternative to impoundment was available.

### *Following the Department's Inventory Policy*

To the extent Springall argues that the State failed to meet its burden as to the fourth element—that the officers followed the department's inventory policy—we also reject his argument. The trial court heard the testimony of several officers employed by the sheriff's department. Villa testified at length about the manner in which this particular inventory was conducted. Rheinhardt testified about how officers in their department generally make the decision to impound a vehicle. Reinhardt also testified that road conditions were a factor that affected the decision to impound a vehicle, and that a fire on the road would play a part in the decision to impound a vehicle. The written inventory policy was also admitted into evidence. This policy requires a deputy to "complete an arrest by making arrangements for the security of the suspect's motor vehicle." Furthermore, the department's written policy requires that an inventory be conducted when a vehicle is to be impounded. The department's written policy also requires that the officers conducting the inventory use a preprinted inventory form and provide a copy of this form to the towing agency, which in turn provides a copy of the form to the person who picks up the vehicle. The record supports an implied finding that the officers in this case followed the department's written inventory policy.

### *Timing of the Decision to Impound and the Inventory*

Springall's primary argument on appeal is that the inventory search was improper because the audio recording demonstrates that the officers were not taking custody of his vehicle and, therefore, there was no need to inventory its contents. Springall argues that "it is clear that the

decision not to impound the vehicle was made at the time the inventory search was conducted."

We disagree. Neither the audio nor the video recording definitively establishes when the deputies

starting conducting the inventory search. The audio recording indicates that Ahrens, at least

initially, planned to leave the vehicle on the side of the road instead of impounding it. In the audio

recording, Ahrens tells Cole that they are going to "red tag" the vehicle and Springall has to come

get it within three days.[2] In the audio recording, Ahrens also tells Springall that he can call his

mom from the jail and she can come get the vehicle. Nevertheless, the audio recording further

demonstrates that, shortly thereafter, Ahrens states that he needs to make sure that there is nothing

valuable in the vehicle and Springall tells him it contains jewelry. Specifically, the audio recording

provides:

| Ahrens: | Just come with him [Cole]. I'm going to just make sure that you don't have anything valuable in here or anything that we need to secure. There ain't no diamond rings or anything? |
|---|---|
| Springall: | No, no, there's some jewelry, everything is good. |
| Ahrens: | Where's the jewelry at? |
| Springall: | It's stuff that I just got from [unintelligible]. It's right there in front. None of it matters. I'm going to lock it. |
| Ahrens: | Well, I've got to do an inventory search on it. Just go with this gentleman right here [Cole]. I gotta just inventory it. |

In addition to the audio recording, we must consider the other evidence in the record. This

evidence shows that both Villa and Rhinehardt were dispatched to the scene to assist Ahrens in

conducting the inventory, and Villa actually assisted Ahrens in conducting the inventory. The other

---

[2]At this point, and several times later in the audio recording, Ahrens states that he needs to perform an inventory. Of course, an inventory is not constitutionally permissible in the absence of a lawful impoundment. *See Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980) (recognizing that an inventory search is only constitutionally permissible if it is conducted pursuant to a lawful impoundment).

evidence in the record also shows that, notwithstanding Ahrens's initial comments about leaving the vehicle parked on the side of the road, the vehicle was in fact impounded. Again, the law provides that an inventory search is not unlawful simply because it is conducted before the vehicle is actually towed and impounded. *Daniels*, 600 S.W.2d at 815; *Evers*, 576 S.W.2d at 47, 49-50.

Based on all of the evidence presented, the trial court could have reasonably inferred that Ahrens changed his mind (perhaps when Springall stated that the vehicle contained jewelry) about leaving the vehicle on the roadside, and instead decided to impound the vehicle. Viewing the record in the light most favorable to the trial court's ruling, we conclude that the trial court could have concluded that the inventory was conducted pursuant to a lawful impoundment.

### *Ruse to Discover Incriminating Evidence*

Finally, Springall argues that the decision to conduct an inventory search was not motivated by a desire to secure any valuables in the vehicle but instead was "a general rummaging in order to discover incriminating evidence." In support of this argument, Springall cites *Cook*, a case in which the trial court granted the defendant's motion to suppress evidence found in an inventory search of a vehicle. 389 S.W.3d at 381. In *Cook*, the defendant was driving her truck when she was arrested during a traffic stop. *Id*. at 378. A close friend of the defendant was a passenger in the truck. *Id*. After the defendant was placed under arrest, one of the officers found a baggy containing methamphetamine in the center console of the truck she was driving. *Id*. at 379. An audio recording established that, within two minutes of finding the methamphetamine, the officer said, "I'm just trying to figure out how I'm gonna justify getting in there and finding it . . . the only way to do that is off an inventory." *Id*. In explaining its decision to suppress the evidence, the trial court expressed concern over the order of events on the tape and the "degree of discretion" exercised by the officers at the scene in conducting the inventory rather than investigating alternatives to impoundment. *Id*. at 381. The trial court also commented that there was no reason

why the passenger could not have driven the truck. *Id*. at 381-82. Deferring to the trial court's fact findings and its evaluation of the credibility of the witnesses, the appellate court upheld the trial court's ruling. *Id*. at 382.

Nothing in the record in the present case shows that the deputies were using the inventory search as a pretext for discovering evidence. In fact, even Springall acknowledges that the audio recording "does not indicate a motive to search the vehicle absent the misguided assertion that an inventory was required." Springall does argue that the arresting deputy's testimony about Springall's demeanor at the time of the arrest "provides some insight" into the deputies' motive. Specifically, Springall calls attention to Cole's testimony stating that, at the time of the arrest, Springall's hands were shaking and that he wanted to have someone come to pick up his vehicle. However, based on this evidence, we cannot say that the trial court was required to conclude that the inventory was merely a ruse to discover incriminating evidence. Again, in light of the circumstances, including the vehicle fire on the road, the need to keep the area clear to allow emergency vehicles to pass, Springall's statement that the vehicle contained jewelry, and the department's policy requiring an arresting deputy to make arrangements for the security of an arrestee's vehicle, the record supports the conclusion that the inventory was conducted pursuant to a lawful impoundment and not as a ruse to discover incriminating evidence.

## CONCLUSION

We conclude the trial court did not err in overruling Springall's objections to the evidence found in the inventory search and in admitting this evidence at trial. The judgment of the trial court is therefore affirmed.

Karen Angelini, Justice

Do not publish